## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES DOYLE,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:18-1784** |
| **v.** | : | **(JUDGE MANNION)** |
| **WAYNE MEMORIAL HOSPITAL,** | : | |
| **Defendant** | : | |

## M E M O R A N D U M

Plaintiff James Doyle is an employee of defendant Wayne Memorial Hospital ("WMH"), and is paid an hourly wage. He is classified as non-exempt from overtime pay requirements. Plaintiff alleges WMH committed unlawful employment practices by failing to pay him overtime when he works over 40 hours, namely, for his one-half hour daily meal breaks since he is often engaged in work-related duties during his breaks. Plaintiff alleges that he was entitled to 2.5 hours of overtime per week. Plaintiff claims that WMH's practices violate the Fair Labor Standards Act as well as the Pennsylvania Wage Payment and Collection Law and the Pennsylvania Minimum Wage Act. Plaintiff and WMH have filed cross-motions for summary judgment. Plaintiff also filed a motion to strike WMH's statement of facts and its response to his statement of facts as untimely. Based on the following, the court will **GRANT IN PART** and **DENY IN PART** plaintiff's motion to strike. The court will **STRIKE** WMH's statement of facts in support of its motion for summary judgment and, will **DENY** WMH's dispositive motion. The court will

consider WMH's response to plaintiff's statement of facts and its evidence. WMH is entitled to judgment as a matter of law with respect to plaintiff's claim for overtime under the WPCL. The court will also **DENY** plaintiff's motion for summary judgment since disputed material facts exist regarding his remaining claims for overtime pay.

## I.   BACKGROUND

Plaintiff contends that he is owed overtime for any hours worked in excess of forty hours per week, as mandated by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201, et seq., as well as the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §260.1, et seq., and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§333.101, et seq. Plaintiff brought suit against defendant WMH on September 12, 2018, (Doc. 1), bringing a claim for violations of the FLSA's overtime provision, 29 U.S.C. §207(a)(1), and claims for violations of WPCL and PMWA's overtime provision, 43 P.S. §331.104(c).

On November 1, 2018, WMH filed its answer to the complaint. (Doc. 7).

After discovery was completed, WMH filed a motion for summary judgment on March 20, 2019, pursuant to Fed. R. Civ. P. 56(c). (Doc. 11). WMH failed to timely file a statement of facts in support of its motion. Plaintiff also filed a motion for summary judgment on March 20, 2019. (Doc. 12). Plaintiff filed his statement of facts when he filed his motion. The cross-motions for summary judgment have been briefed and, statement of facts,

2

responses, as well as exhibits have been submitted.

On April 30, 2019, plaintiff filed a motion to strike WMH's statement of facts and its response to his statement of facts as untimely. (Doc. 26). Plaintiff filed a brief in support of his motion to strike and WMH filed an answer to it.

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 29 U.S.C. §216(b). Also, the court can exercise supplemental jurisdiction over plaintiff' state law claims under 28 U.S.C. §1367.

## II.    MOTION TO STRIKE

The court will first address plaintiff's motion to strike as untimely WMH's statement of facts in support of its summary judgment motion and its response to plaintiff's statement of facts in support of his motion.

WMH filed its motion to summary judgment on March 20, 2019, without its statement of facts. (Doc. 11). Also, on March 20, 2019, plaintiff filed his motion for summary judgement, (Doc. 12), along with his statement of facts, (Doc. 13), and his brief in support, (Doc. 14). WMH then filed its joint brief in support of its motion and in opposition to plaintiff's summary judgment motion on April 3, 2019. (Doc. 15). However, WMH did not file its response to plaintiff's statement of material facts as required. Plaintiff filed his brief in opposition to WMH's motion on April 16, 2019. (Doc. 21).

On April 16, 2019, plaintiff filed his reply brief in support of his summary judgment motion which in part pointed out WMH's failure to comply with Local

Rule 56.1, M.D.Pa., regarding its statement of facts and response to plaintiff's statement. (Doc. 22). On this same date, WMH filed its untimely statement of facts in support of its summary judgment motion and its untimely response to plaintiff's statement of facts. (Docs. 23 & 24).

On April 30, 2019, plaintiff moved to strike WMH's untimely statement of facts and its untimely response to his statement of facts. (Doc. 26). Plaintiff simultaneously filed his brief in support of his motion to strike. (Doc. 27). WMH filed an answer to plaintiff's motion to strike, (Doc. 29), but it did not file brief in opposition to the motion as required to oppose the motion under Local Rule 7.6, M.D.Pa.

On May 7, 2019, plaintiff filed his response to WMH's statement of facts, despite the fact that WMH's statement was untimely, out of an abundance of caution noting that he did so to protect the record in the event that his motion to strike was denied. (Doc. 28).

No doubt that Local Rule 56.1, M.D.Pa., provides:

a party must file a separate statement of material facts along with any motion for summary judgment. M.D.Pa. L.R. 56.1. A party opposing summary judgment must file a corresponding answer to the statement of material facts, responding to the moving party's filing. *Id.* Where an opposing party fails to object in its answer, those facts in the moving party's statement are considered admitted. *Id.*

*See* Weitzner v. Sanofi Pasteur Inc., 909 F.3d 604, 613 (3d Cir. 2018).

The district court has discretion with respect to its application and interpretation of its own local rules. *See id.* On appeal, the district court's decision with respect to its local rules is reviewed for abuse of discretion,

which "may occur as a result of an errant conclusion of law, an improper application of law to fact, or a clearly erroneous finding of fact." *Id.* (citation omitted). Local Rule 56.1 "is essential to the Court's resolution of a summary judgment motion" due to its role in "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence." *Id.* (citations omitted). As such, "the District Court is in the best position to determine the extent of a party's noncompliance with Local Rule 56.1, as well as the appropriate sanction for such noncompliance." *Id.* Thus, the proper sanction for violating Rule 56.1 is also within the district court's discretion. Additionally, the district court has "many possible sanctions available to it" for violations of Rule 56.1, and "[i]t is beyond question [as one sanction] that the District Court has the authority to strike filings that fail to comply with its local rules." *Id.* at 614.

In <u>Weitzner</u>, the Third Circuit found that the district court did not abuse its discretion in striking paragraphs of plaintiffs' answer to the defendant's statement of facts which were noncompliant with Local Rule 56.1, and in deeming defendants' corresponding facts as uncontroverted and admitted.

Here, it is clear that WMH violated Rule 56.1 by untimely filing its statement of facts in support of its summary judgment motion and by untimely filing its response to plaintiff's statement of facts. In fact, WMH did not file its stated documents until after plaintiff pointed out its violations of Rule 56.1 in his reply brief. Plaintiff was in compliance with the Rule. To make matters worse, WMH did not properly oppose plaintiff's motion to strike under Rule

5

7.6. The question is what sanction the court will impose on WMH for its violations of this court's Rules.

In this case, plaintiff moves to have WMH's untimely statement of facts supporting its motion for summary judgment struck and, he requests the court to deny WMH's motion in its entirety for its failure to comply with Rule 56.1.

With respect to plaintiff's motion for summary judgment, plaintiff states that since WMH failed to file its required response to his statement of facts when it filed its brief in opposition to his motion for summary judgment, all of his statement of facts should be deemed admitted by WMH pursuant to Local Rule 56.1.

Both sanctions which plaintiff seeks are within the options available to the court to impose on WMH for its violations of Rule 56.1.

In light of WMH's disregard for the Local Rules of this court, both 56.1 and 7.6, and based on WMH's lack of explanation for its untimely filings and noncompliance with the Rules, the court will grant, in part, plaintiff's motion to strike. The court strikes WMH's untimely statement of facts supporting its motion for summary judgment, (Doc. 23), and, denies WMH's summary judgment motion, (Doc. 11), for its failure to comply with Rule 56.1.

With respect to WMH's untimely response to plaintiff's statement of facts in support of his motion for summary judgment, the court will deny plaintiff's motion to strike and will consider WMH's responses, (Doc. 24), that are supported by the record, as well as WMH's evidence. As the Third Circuit made clear in <u>Weitzner</u>, 909 F.3d at 614, even though the district court struck

6

portions of plaintiffs' responses to defendant's statement of facts that were in violation of Local Rule 56.1 and deemed these facts as admitted, "the district court was still required to conduct a full [Rule 56] analysis to determine whether granting summary judgment was appropriate", including "fully address[ing] plaintiffs' factual allegations."

## III.   MATERIAL FACTS FOR SUMMARY JUDGMENT MOTION[1]

In September of 2014, plaintiff was hired by WMH, located in Honesdale, Pennsylvania, as a security officer. Plaintiff is still presently employed in this position by WMH.

WMH is an employer as defined by the FLSA, WPCL, and PMWA. Under the FLSA, WMH is required to pay employees not less than one and one-half times the employee's pay for all hours worked over 40 hours in a work week.

Plaintiff does not hold a management position with WMH and is paid on an hourly basis, making about $14.85 per hour.

No doubt that performing the duties of a security officer is for the benefit of WMH.

Security officers are required to work 8½ hours per day. However,

---

[1]Unless otherwise noted, the facts are taken from the plaintiff's statement of facts, from WMH's response thereto, and the exhibits submitted by both parties. The court considers the facts and draws all reasonable inferences in favor of the non-moving party, which for present purposes is WMH. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 266–67 (3d Cir. 2005).

security officers do not get paid for their half hour daily meal break. Rather, WMH automatically deducts one half hour from a security officer's daily pay for his meal break.

At all times during a security officer's shift, they must have a pager, radio, pepper spray, handcuffs and a flashlight. Security officers must have their radio and pager with them so that they can respond to emergencies. WMH requires security officers to respond to emergencies even during their meal break. Security officers are required to be alert during their entire 8½ hour work shift and plaintiff stated that they must be able to respond to a call at "a moment's notice." As such, plaintiff testified that security officers are on call during their entire 8½ hour shift, including during their meal break. However, WMH states that security officers are not on call during their entire 8½ hour shift, and that they are relieved from their work duties during their meal break, except for emergencies. WMH also indicates that if a security officers's meal break is interrupted, it may allow the officer to complete his meal break. Further, if a security officer's lunch break is interrupted to respond to an emergency, the officer can request to be paid for that time.

The parties dispute whether security officers are permitted to leave the premises of WMH during their shift. Plaintiff, however, admitted he voluntarily chooses the location that he wishes to eat his meals and that he is not required to eat his meal in any particular location. Plaintiff also indicated that while his time during meal breaks is usually spent for his benefit, he mostly eats his meals at his desk and monitors the hospital's surveillance cameras.

The parties also dispute whether officers are allowed to change out of their uniforms during their shift and whether they are allowed to sleep during their break.

WMH provides security officers with a half hour lunch break during every shift and the officers do not get paid for meal breaks. However, plaintiff states that security officers are not completely relieved from their work duties during their half hour meal break. One security officer, namely, Donald Bishop, stated that he relieves the switchboard operator at the hospital and performs the operator's duties when he is supposed to be taking his meal break. WMH points out, however, that Bishop voluntarily relieves the switchboard operator during some of his meal breaks and that he never requests to be paid overtime when he does so.

Plaintiff testified that WMH is aware that at times security officers have to work through their meal break, including time when the officers break is interrupted to respond to an emergency. WMH states that it is not aware that security officers have to regularly work through their meal break and, states that the officers are not required to work through their meal break. However, WMH does allow an employee, including a security officer, to be paid if he has to work during his half hour lunch break if the employee puts in a request pursuant to WMH's policy.

Plaintiff testified that WMH's policy does not advise its employees how to request payment for meal breaks they miss on their shift, and that the hospital has never told the security officers how to request pay for a missed

meal break. Plaintiff also testified that WMH's Security Management Plan and its Meal and Rest Periods provision does not tell employees that if they work through their meal break to put in for overtime pay on the Time and Attendance Log. (Doc. 11-3). However, WMH's indicates that its policy does inform employees how to request pay for a missed meal break. WMH also states that it has told security officers how to request pay for a meal break that they have missed and, that plaintiff was aware how to do so. In fact, on January 30 (no year specified), plaintiff requested a half hour of overtime when he missed his meal, and other security officers put in for overtime in 2017 and 2018 when they missed a meal. (Id.). Plaintiff could not recall if he got paid overtime pursuant to his request. Plaintiff also put in for overtime when he filled in for another officer's shift.

Plaintiff acknowledged in his deposition that WMH has a process, procedures, rules, regulations and policies to seek payment for overtime, however, he stated that he does not put in for overtime when his meal break is interrupted for work. However, plaintiff and Bishop both testified they never saw WMH's policy related to meal breaks until after the instant lawsuit was filed and shortly before their depositions were taken on November 20, 2019. In any event, plaintiff points out that WMH's policy provides that meal breaks will be unpaid.

Additionally, plaintiff stated that he thought he would not be paid for overtime by WMH based on comments made by his supervisor John Conte that he was sure officers could find 30 minutes in their shift to eat and based

on his impression that he was being "blown off" when he brought up the overtime issue. Plaintiff construed Conte's comments and reaction to overtime discussions as discouraging requests for overtime so he did not submit such requests.

## IV.    DISCUSSION[2]

"In 1938, Congress enacted the FLSA to protect covered workers from substandard wages and oppressive working hours." Friedrich v. U.S. Computer Servs., 974 F.2d 409, 412 (3d Cir. 1992) (citing Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981). The Fair Labor Standards Act provides that:

> "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

29 U.S.C. §207(a)(1). Thus, employers covered by the FLSA must pay overtime compensation to employees who work for more than forty hours a week "unless one or another of certain exemptions applies." Packard v.

---

[2]Since both parties state the correct standard of review applicable to a summary judgment motion, the court will not repeat it. Suffice to say that to prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact and, that the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. See Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

Pittsburgh Transp. Cp., 418 F.3d 246, 250 (3d Cir. 2005).

The PMWA, like the FLSA, provides that employees shall receive overtime wages of "not less than one and a half times" their regular wage for any hours worked in excess of forty hours a work week. 43 P.S. §333.104(c). Pennsylvania courts have looked to federal law regarding the FLSA in applying the PMWA. Baum v. Astrazeneca LP, 372 F.App'x 246, 248, n. 4 (3d Cir. 2010) (citing Commonwealth of Pa. Dept. of Labor and Indus., Bureau of Labor Law Compliance v. Stuber, 822 A.2d 870, 873 (Pa.Commw. 2003), aff'd, 859 A.2d 1253 (2004) (applying "federal case law" regarding the FLSA to a PMWA claim). The Pennsylvania courts have determined that "it is proper to give deference to federal interpretation of a federal statute when the state statute substantially parallels it." Id. Additionally, "claims under state minimum and overtime laws are not preempted under the FLSA." Knepper v. Rite Aid Corp., 675 F.3d 249, 263 (3d Cir. 2012).

"To state a claim under the FLSA for minimum wage and overtime compensation, plaintiffs must allege that: (1) they are employees of the defendant; (2) that their work [or their business's work] involved some kind of interstate activity[;] and (3) the approximate number of hours worked for which they did not receive these wages." SeYoung Ra v. Gerhard's, Inc., 2019 WL 95473, *4 (E.D.Pa. Jan. 3, 2019) (citations omitted).[3] See also 29 U.S.C.

---

[3]"Only those employees who are 'engaged in commerce or in the production of goods for commerce,' or who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce' may seek recovery under the FLSA's minimum and overtime wage provisions." SeYoung Ra, 2019 WL 95473, *4 (citation omitted). Commerce is defined in the FLSA as "trade, commerce, transportation, transmission, or

§207.

Plaintiff also asserted a claim for overtime under the WPCL. As the court in Ahmed v. Highway Freight Systems, Inc., 2014 WL 6473375, *3 (E.D.Pa. Nov. 19, 2014), stated:

> The WPCL "does not create a right to compensation ... [r]ather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are

---

communication among the several States or between any State and any place outside thereof." 29 U.S.C. §203(b). "Engagement in interstate commerce, either by an employee or by the employer as a whole, is a prerequisite for liability for the FLSA's overtime requirement. A plaintiff may satisfy this requirement by showing 'individual coverage' through his personal engagement in interstate commerce or 'enterprise coverage' through the employer's engagement in interstate commerce." Ethelberth v. Choice Sec. Co., 91 F.Supp.3d 339, 353 (E.D.N.Y. 2015). "The plaintiff-employee bears the burden of establishing FLSA coverage to prove his employer's liability." Id. at 354 (citations omitted). "Activities that simply 'affect or indirectly relate to interstate commerce' are insufficient. Id.

"An employer is subject to enterprise coverage if its 'annual gross volume of sales made or business done is not less than $500,000' and it 'has employees engaged in commerce or ... [the] handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person.'" Id. at 355 (citing 29 U.S.C. §203(s)(1)(A)). "Courts have found this element satisfied where employees "merely handled supplies or equipment that originated out-of-state" or that have "moved in interstate commerce." Id. (citations omitted).

In the instant case, plaintiff does not allege or produce evidence to show that WMH was an enterprise engaged in commerce under the FLSA. Rather, he only alleges in his complaint that WMH is an employer within the meaning of the FLSA. (Doc. 1, ¶3). In its answer to the complaint, WMH admitted this allegation. While plaintiff's allegation is sufficient to state a claim under the FLSA at the pleading stage, at trial he must establish through evidence that WMH is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the 29 U.S.C. §203(e)(1) of the FLSA. See id. "Enterprise coverage 'applies so long as some of the employees wear uniforms or use items such as radios, books, flashlights, clipboards, brooms, bags, and cleaning supplies that have moved in interstate commerce.'" Ethelberth, 91 F.Supp.3d at 355 (citation omitted).

earned." DeAsencio v. Tyson Foods, Inc., 342 F.3d 301, 209 (3d Cir. 2003).

"[A] prerequisite for relief under the WPCL is a contract between employee and employer that sets forth their agreement on wages to be paid ... Relief under the WPCL is implausible without [the] existence of a contract." Lehman v. Legg Mason, Inc., 532 F. Supp. 2d 726, 733 (M.D.Pa. 2007). "Thus, in order to state a WPCL claim upon which relief can be granted, a plaintiff must allege the existence of a contract that entitles him or her to the claimed wages." Szewczyk v. United Parcel Service, Inc., 2019 WL 54230362019, *5 (E.D.Pa. Oct. 22, 2019). Plaintiff has not established that WMH had a contractual obligation to pay him overtime and, that he was contractually entitled to compensation for which he was not paid as required. Ahmed, 2014 WL 6473375, *3; see also DeAsensio, 342 F.3d at 309 ("The []WPCL provides a statutory remedy when an employer beaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned."); Drummond v. Herr Foods, Inc., 2014 WL 80729, *3 (E.D.Pa. Jan. 9, 2014) (holding that a plaintiff must "establish a contractual obligation to compensation to state a WPCL claim.").

Nonetheless, "[w]hen "employees do not work under an employment contract or a collective bargaining agreement," a plaintiff may access the WPCL by establishing "the formation of an implied oral contract between [the employer] and its employees." SeYoung Ra, 2019 WL 95473, *4 (citing DeAsensio, 342 F.3d at 309). "Under Pennsylvania law, an implied contract arises when parties agree on the obligation to be incurred, but their intention,

instead of being expressed in words, is inferred from the relationship between the parties and their conduct in light of the surrounding circumstances." *Id.* (citation omitted). However, plaintiff has not pled and has not established the existence of an oral contract or an implied oral contract in this case.

As such, WMH is entitled to judgment as a matter of law with respect to plaintiff's overtime claim under the WPCL.

At issue with respect to plaintiff's overtime pay claims under the FLSA and PMWA is whether WMH is required to pay plaintiff 2½ hours of overtime per week for time plaintiff alleges he works during his meal breaks. "Among the bedrock principles of the FLSA is the requirement that employers pay employees for all hours worked." Katz v. UPMC, 2019 WL 3843041, *11 (W.D.Pa. Aug. 15, 2019) (citing 29 C.F.R. §778.223 ("Under the Act an employee must be compensated for all hours worked.")). "In order to prevail on an FLSA claim for unpaid hours, an employee must prove that they "were suffered or permitted to work without compensation." *Id.* (citations omitted).

In Jones v. Does 1-10, 857 F.3d 508, 515 (3d Cir. 2017), the Third Circuit examined plaintiffs' FLSA claim that their meal breaks should be credited towards their hours worked and that they should be entitled to overtime pay for their breaks, and explained:

> The FLSA itself does not define what are compensable work hours. Instead, the Wage and the Hour Division of the Department of Labor issued a number of regulations providing employers and employees alike guidance on how it would implement and enforce the law. [*See* 29 C.F.R. §785.19(a)]. One such regulation provides that employers need not compensate employees for bona fide meal periods because those are not considered to be compensable worktime. The regulation defines a bona fide meal period as rest periods during which "[t]he

employee must be completely relieved from duty for the purpose of eating regular meals," but "[t]he employee is not relieved if he is required to perform any duties, whether active or inactive, while eating."

(footnotes omitted).

The Third Circuit adopted the "predominant benefit test" which provides that "the FLSA does require employees to be compensated for meal periods if they are 'primarily engaged in work-related duties during' those times. *Id.* (citing <u>Babcock v. Butler Cty.</u>, 806 F.3d 153, 156 (3d Cir. 2015)). The Third Circuit has "explained that the 'predominant benefit test is necessarily a fact-intensive inquiry,' where the 'essential consideration ... is whether the employees are in fact relieved from work for the purpose of eating a regularly scheduled meal.'" *Id.* (citing <u>Babcock</u>, 806 F.3d at 157)). As such, an employer "is subject to a statutory obligation to compensate the plaintiffs for time spent during meal periods if the plaintiffs, ..., are primarily engaged in work-related duties during these breaks." Id.

In <u>Babcock</u>, 806 F.3d at 158, the Third Circuit "determined that the meal period at issue there inured primarily to the benefit of the employees by looking at both the facts and the CBA." <u>Jones</u>, 857 F.3d at 516. The Court then "found that though the plaintiffs faced some restrictions during their meal breaks, 'on balance, these restrictions did not predominantly benefit the employer,' particularly because the plaintiffs could 'request authorization to leave [the workplace] for their meal period and could eat lunch away from their desks.'" Id. (citing <u>Babcock</u>, 806 F.3d at 157).

In the instant case, there is no CBA at issue. Thus, the court will look

only to the facts in the record to determine whether plaintiff is "primarily engaged in work-related duties" during his meal breaks or whether his meal periods "inured primarily to the benefit of the [plaintiff]." *Id.*

WMH argues that its "policy allows employees to make effective use of their time for a lunch break", and that "plaintiff is completely freed from duties during his meal period." It states that plaintiff failed to show that his lunch break "is so distracting and cumbersome as to seriously inhibit his personal activities."

As in Babcock, plaintiff faces some restrictions during his meal breaks, such as during his shift, he must have a pager, radio, pepper spray, handcuffs and a flashlight, and he is required to respond to emergencies even during his meal break. However, plaintiff is not required to monitor his pager, radio or surveillance during his meal breaks. If a security officer's meal break is interrupted, WMH may allow the officer to complete his meal break. Additionally, if a security officer's lunch break is interrupted to respond to an emergency, the officer can request to be paid for that time pursuant to WMH's policies and procedures and WMH will give the officer overtime pay. Although it is disputed whether security officers are permitted to leave the premises of WMH during their meal breaks, plaintiff is not required to be at a certain location during his breaks. Nor is he required to eat at his desk. WMH states that if plaintiff wants to leave the hospital's premises during his meal break, he only has to tell someone where he is going and be available to be contacted by his pager. In fact, plaintiff conceded that he chooses the location where he eats his meals and that he is not required to eat his meal in any

particular location.

WMH states that there is no evidence as to how often plaintiff had to respond to calls or pages during his meal breaks and thus he failed to show that he could not effectively use his meal break time or that this time was predominantly used for the work-related duties. WMH further points out that it was plaintiff's own fault for not following its procedures and policies in place to request overtime pay when his meal breaks were interrupted, since he admitted that he chose not to request overtime payment.

Plaintiff argues that security officers are not completely relieved from their work duties at any time during their 8½ hour shifts, and that they have to remain on premises, in uniform, and alert. He also states that officers are on-call their entire shift, including during their meal breaks, and that they must respond to a call at "a moment's notice." Plaintiff also states that he is entitled to 2½ hours of overtime per week despite the fact that he did not put in a request for any overtime pay since WMH knew he worked 8½ per day and was on-call during his entire shift. He further contends that WMH had constructive knowledge and reason to believe that he was working overtime during his meal breaks. Additionally, plaintiff states that his supervisor, Conte, "actually encourages security guards to not claim overtime since he has said '[that they could] find a half an hour [during their shift] where [they] can sit down and eat', when the Security Officers discussed getting paid since they have to be available during their meal break."

In Katz, 2019 WL 3843041, *12, the court stated:

"[t]here is no violation of the FLSA where the employee performs

uncompensated work but deliberately prevents his or her employer from learning of it." However, "[a]n employer who is armed with this knowledge cannot stand idly by and allow an employee to perform [uncompensated] work without proper compensation, even if the employee does not make a claim for the [ ] compensation." Constructive knowledge can be imputed to the employer when "it has reason to believe that its employee is working beyond his shift."

(quoting Stanislaw v. Erie Indem. Co., 2012 WL 517332 at *4, (W.D.Pa. 2012) (internal citations omitted).

The court finds too many disputed facts as to whether plaintiff's meal breaks constitute work compensable under the FLSA as overtime or whether they are bona fide meal periods. Facts are disputed as to whether plaintiff's meal breaks predominantly benefitted WMH and as to whether plaintiff remained on premises and on duty during the breaks, which would make the time compensable under the FLSA. See Formica v. US Environmental Inc., 2018 WL 3374764, *3 (E.D.Pa. July 11, 2018). Additionally, disputes of fact exist as to whether plaintiff's on-call status as well as the other alleged restrictions during meal breaks, are so onerous that they prevent plaintiff from effectively using his meal breaks as personal time. Dispute of fact also exist as to whether WMH had constructive knowledge that plaintiff was working during his meal breaks and as to how often he was doing so. Plaintiff also presented evidence that his supervisor Conte encouraged security officers not to make claims for overtime pay when they had to work during their meal breaks which lends support to his claim that WMH had constructive knowledge they were working during breaks.

Thus, plaintiff's motion for summary judgment, (Doc. 12), will be denied.

*See* <u>Katz</u>, *supra*.[4]

## V.   CONCLUSION

For the above reasons, plaintiff's motion to strike, **(Doc. 26)**, will be **GRANTED IN PART** and **DENIED IN PART**. WMH's untimely statement of facts supporting its motion for summary judgment, **(Doc. 23)**, is **STRUCK** and, WMH's summary judgment motion, **(Doc. 11)**, is **DENIED** for its failure to comply with Local Rule 56.1. Plaintiff's motion to strike WMH's untimely response to his statement of facts in support of his motion for summary judgment, **(Doc. 24)**, is **DENIED**. WMH is **GRANTED** judgment as a matter of law with respect to plaintiff's overtime claim under the WPCL. The plaintiff's motion for summary judgment, **(Doc. 12)**, is **DENIED** with respect to his overtime pay claims under the FLSA and PMWA, and these claims will proceed to trial.

---

[4]At trial, plaintiff must produce sufficient evidence showing the length and frequency of his unpaid work each week during his meal breaks to support his FLSA claim that he worked more than forty hours in a given week. <u>Davis v. Abington Memorial Hosp.</u>, 765 F.3d 236, 241 (3d Cir. 2014) ("[T]o recover overtime compensation under the FLSA, "an employee must prove that he worked overtime hours without compensation, and he must show the amount and extent of his overtime work as a matter of just and reasonable inference.") (citation omitted). In his deposition, plaintiff only testified that during the past year and a half he was paged and interrupted during his meal break "at least half of the days" that he worked. He will have to be more specific at trial as to the number of days per week he was interrupted for work and how long the work activity lasted during each interruption.

A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: February 13, 2020**

18-1784-01